## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNISTRIP TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>LIFESCAN, INC. and LIFESCAN SCOTLAND, LTD.,<br><br>Defendants. | Civil Action No. 14-CV-04518-JHS<br><br><br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF: (1) SECTION 3 OF THE CLAYTON ACT (15 U.S.C. § 14); (2) SECTION ONE OF THE SHERMAN ACT (15 U.S.C. § 1); (3) SECTION TWO OF THE SHERMAN ACT -- ATTEMPT TO MONOPOLIZE (15 U.S.C. § 2); AND (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND ACTUAL CONTRACTUAL RELATIONSHIPS [DEMAND FOR JURY TRIAL]**

Plaintiff UniStrip Technologies, LLC ("UniStrip") files this First Amended Complaint against defendants LifeScan, Inc. and LifeScan Scotland, Ltd. (collectively "LifeScan" or "defendant") to secure damages and injunctive relief, and demanding trial by jury, claims and alleges as follows:

## I. SUMMARY OF THE CASE

1.   This lawsuit centers around defendant LifeScan's deliberate and continuing attempt to restrain trade and to monopolize the market for blood glucose test strips: (a) in general, and (b) for use in LifeScan's OneTouch Ultra®, Ultra®2, UltraSmart®, and UltraMini® blood glucose meters.  LifeScan possesses a market share of approximately 40% in the general test strip market, and virtually 100% of the market for test strips that are approved or cleared for use with its LifeScan OneTouch Ultra, Ultra2, UltraSmart and UltraMini blood glucose meters.

2.   In early 2014, UniStrip began marketing and selling a low cost competing test strip that was cleared by the FDA for use in certain models of meters sold by defendant LifeScan

in the United States.  To thwart UniStrip's lower priced competition, defendant LifeScan has engaged in a campaign that consists of at least the following anticompetitive, exclusionary, and monopolistic acts: (a) coercively induced a group boycott of UniStrip's test strips; and (b) conditioned the payment or allowance of discounts, rebates and/or other incentives provided to actual and potential customers of LifeScan test strips on an agreement or understanding not to purchase or distribute UniStrip's generic competing test strips.  This multi-faceted anticompetitive scheme has been adopted and implemented to deprive consumers of the opportunity and alternative of purchasing competitive lower priced FDA cleared test strips supplied by UniStrip.

3.     As a consequence of LifeScan's conduct, competition in the test strip product markets has been suppressed and virtually eliminated.  Distributors and consumers in that market have suffered a loss of choice and have been required to pay higher prices for test strips that would be priced lower in a competitive market. Plaintiff UniStrip, the competitive process, and consumers, have suffered antitrust injury by reason of LifeScan's unlawful trade restraining and exclusionary conduct.

## II.  JURISDICTION AND VENUE

4.     This First Amended Complaint is filed and this action is initiated under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to recover the damages caused by, and to secure injunctive relief against, defendant LifeScan for its past and continuing violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and Section 3 of the Clayton Act (15 U.S.C. § 14), as alleged herein.

5.     This Court has original and exclusive jurisdiction over the subject matter of this civil action under 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.  This Court may exercise

supplemental jurisdiction over the state law based claim pursuant to 28 U.S.C. § 1367.

Defendant LifeScan maintains its headquarters in Wayne, Pennsylvania and transacts business on

a systematic and continuous basis within this District, and may be found here, within the

meaning of 15 U.S.C. §§ 15, 22 and 28 U.S.C. § 1391.[1]  The contracts and conduct complained

of emanate from LifeScan's headquarters in Wayne, Pennsylvania.  Further, the unlawful acts

alleged herein were performed and occurred in material part within this District.

### III.  <u>INTERSTATE COMMERCE</u>

6.    The actions complained of herein have, and will, restrain and adversely affect

interstate commerce in that defendant sells its test strips across state lines. Further, defendant

purchases goods and supplies in interstate commerce.

### IV.  <u>THE PARTIES</u>

7.    Plaintiff UniStrip Technologies, LLC is a limited liability company organized and

existing under the laws of North Carolina with its principal place of business located at 301

McCullough Drive, Charlotte, North Carolina 28262.

8.    Defendant LifeScan, Inc. is a corporation organized and existing under the laws of

California with its principal place of business and headquarters in Wayne, Pennsylvania.

LifeScan, Inc. is a wholly owned subsidiary of the Johnson & Johnson Company ("J&J"), and

claims to be the market "leader" for blood glucose monitoring systems.  J&J is headquartered in

New Brunswick, New Jersey, which is approximately sixty (60) miles from Philadelphia,

Pennsylvania.

---

[1] Until recently, LifeScan, Inc. was headquartered in Milpitas, California.  LifeScan, Inc. has closed that office and the management of the company is now conducted in Wayne, Pennsylvania.  LifeScan notified the Food and Drug Administration that the effective date of this move was July 1, 2014.

9.      Defendant LifeScan Scotland, Ltd., another J&J company, is a private limited company organized under the laws of the United Kingdom with its principal place of business in Inverness, Scotland.  LifeScan Scotland is a wholly owned subsidiary of J&J.  LifeScan Scotland conducts business with LifeScan, Inc. at its Wayne, Pennsylvania location.

## V. <u>STATEMENT OF THE CASE</u>

10.      Diabetes has reached epidemic conditions in the United States.  According to the American Diabetes Association, 25.8 million Americans had diabetes in 2011, which is 8.3% of the population.  In 2007 diabetes was listed either as the cause or contributing factor for over 230,000 deaths.  Blood glucose monitoring by people with diabetes has been proven to be effective in controlling glucose values.  Among the benefits of home monitoring is that patients can understand the symptoms of hyper and hypoglycemia, and the impact of diet, activity and medication on glucose levels.  Most people with diabetes can achieve a high level of control on their blood glucose levels by following a physician's plan that includes regular monitoring.

11.      Self-testing blood glucose monitoring systems are used as an aid to monitor the effectiveness of diabetes control.  Such systems are used to quantitatively measure glucose in fresh capillary whole blood samples taken from the finger, palm, or forearm.  Plaintiff's UniStrip1™ product is indicated for use by people with diabetes in their home as an aid to monitor the effectiveness of diabetes control.  Most manufacturers of blood glucose monitors desire to increase the level of compliance through testing.  Improvements have been made, including the introduction of no-coding systems, audible meters, faster processing times, and smaller blood sample requirements.

12.      Though systems are better today, and more people with diabetes are aware of the benefits of testing, the high cost of name and brand monitor systems continues to have a

significant impact and negative deterrent to testing.  The U.S. FDA has recently cleared plaintiff's UniStrip1 Test Strips for use with LifeScan's OneTouch Ultra, OneTouch Ultra2, OneTouch UltraMini and OneTouch Ultra UltraSmart blood glucose monitoring systems.  With "generic" disposable test strips now available for use by people who own these LifeScan OneTouch Ultra meters, people with diabetes have a choice to purchase the much lower priced UniStrip1 Test Strips marketed and sold by plaintiff.  However, virtually all retailers and wholesalers want to continue to make available LifeScan's branded test strips to sell side-by-side with UniStrip's lower priced generic test strips.  This would allow consumers to choose among competing test strips for use with LifeScan's blood glucose test meters.  LifeScan's exclusionary conduct has precluded UniStrip from engaging in such side-by-side competition.

13.     Tests indicated that the UniStrip1 used with the OneTouch Ultra, Ultra2, UltraMini and UltraSmart blood glucose meters provide accurate results that are closely comparable to the results obtained using the four OneTouch Ultra blood glucose monitoring systems and the Ultra test strips that are manufactured and marketed by LifeScan.  Each system's performance data has been plotted on a Consensus Error Grid for comparison.  People owning and using these LifeScan meters do not have to change these meters to realize the savings of buying and using UniStrip1 test strips.

14.     Patients with diabetes will continue to look for ways to cope with the high cost of managing the disease.  One in every five dollars spent on healthcare in America is for the care of people diagnosed with diabetes.  The average annual medical spending for a person with diabetes is about $13,700, which is 2.3 times that of people without diabetes.

15.     Due to cost, U.S. patients failed to fill 6.8% of the name-brand prescriptions their doctors requested in the 2008 fourth quarter, a 22% increase from the first quarter 2007.  Actions

like these come at the expense of patient health and add to the annual economic cost of the disease--$245 billion spent on persons diagnosed with diabetes in 2012.  This figure includes more than $29 billion for diabetes supplies, and $44 billion for prescription medications. Indirect costs resulting from increased absenteeism, reduced productivity, disease-related unemployment disability, and loss of productive capacity due to early mortality add up to $69 billion.

16.     Blood glucose monitoring options should not be cost-prohibitive.  Generic blood glucose test strips, also referred to as "alternative test strips" cleared by the U.S. FDA for use with brand name meters -- such as UniStrip1 Test Strips --when used as intended, provide an effective alternative that can save hundreds to thousands of dollars per year for people with diabetes on test strips alone (compared to name-brand strips).

17.     Plaintiff's UniStrip1 Test Strips have been subjected by the U.S. Food and Drug Administration to the same clinical testing, scrutiny and approval process as the name brands.

18.     Lower cost does not mean lower quality.  The UniStrip1 studies demonstrate that UniStrip1 Test Strips deliver high levels of accuracy and precision when tested as intended. Plaintiff's test strip products are offered for sale at price points significantly below -- as much as 80% -- those of name brands.  People with diabetes can now use and rely on the UniStrip1 Test Strips like they have become accustomed to doing with generic pharmaceuticals.  The UniStrip1 Test Strips are a low cost, high quality, alternative for blood glucose testing to the LifeScan OneTouch Ultra test strips for consumers who use the OneTouch Ultra, Ultra2, UltraSmart, and UltraMini meters.  Some consumers prefer to purchase brand name test strips.  Consequently, retailers and wholesalers feel compelled to continue to supply LifeScan's branded test strips.

They desire to also supply alternative test strips sold by plaintiff UniStrip but cannot do so by reason of LifeScan's exclusionary and threatening conduct.

## VI.  CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**(Unlawful Exclusionary Arrangements in Violation of Section 3 of the Clayton Act (15 U.S.C. § 14))**

19.     Plaintiff UniStrip hereby alleges and incorporates by reference each allegation set forth in Paragraphs 1 through 18 of this First Amended Complaint, as if set forth in full herein.

20.     Section 3 of the Clayton Act (15 U.S.C. § 14), makes it unlawful, *inter alia*, "[f]or any person. . .to. . . make a sale or contract for sale of goods. . .on the condition, agreement, or understanding that the . . . purchaser thereof shall not use or deal in the goods. . .of a competitor. . .of the . . . seller, where the effect. . .may be to substantially lessen competition or tend to create a monopoly" in the relevant market.  Under Section 3, the conditioning of the offer, allowance or payment of rebates or discounts to preclude or exclude the use of a competitor's products is also unlawful.  Arrangements and contracts whose probable effect is to foreclose competition in a substantial share or segment of the line of commerce affected violate Section 3.

21.     The relevant product market (or submarket) for antitrust purposes in this case is defined as: (a) all blood glucose disposable test strips, and (b) as a submarket, the disposable test strips cleared for use with LifeScan's OneTouch Ultra, Ultra2, UltraSmart and UltraMini glucose test meters.  LifeScan touts itself as the leader in the "market for blood glucose monitoring systems," which includes its test meters.  LifeScan claims market superiority based its meters' fastness, ease of use, and accuracy.   No test strips other than those produced by LifeScan and UniStrip are reasonably interchangeable or cleared for use with the above-identified LifeScan glucose test meters.  There are no substitutes for these test strips.  The relevant market only

consists of commodities reasonably interchangeable by consumers for the same purpose.  There is a low cross-elasticity of demand between test strips for use with LifeScan's test meters and test strips that are not compatible with and cannot be used on such meters.

22.     The relevant geographic market for antitrust purposes is the United States.

23.     LifeScan dominates the market for test strips overall in the United States, possessing a market share greater than 40%, and the share for its test strips to be used with its four LifeScan branded meters is virtually 100%.

24.     Plaintiff UniStrip has the requisite standing to assert antitrust claims against defendant LifeScan because it is a participant and competitor in the relevant market.

25.     The anticompetitive scheme and plan of defendant LifeScan to substantially lessen competition and create a monopoly in the above-described trade and commerce has and continues to be done with the intent to specifically eliminate plaintiff UniStrip as a viable competitor and threat to LifeScan's test strip business, and to reduce competition in general. LifeScan's conduct has lessened choices for test strips for its test meters and made buyers resistant to stocking and selling UniStrip's competing test strips.  LifeScan's overall anticompetitive scheme consists of at least the following acts/conduct to be viewed as a whole:

(a)     successfully threatened, intimidated and coerced actual and potential purchasers of UniStrip's test strip products not to buy such test strips;

(b)     induced, organized and implemented a group boycott, or concerted refusal to deal, among wholesalers and retailers, including but not limited to, Walgreen's (prospective contractual relationship), Burlington Drug (prospective contractual relationship), Discount Drug Mart (cancelled contract), AmerisourceBergen (prospective contractual relationship), GEMCO Medical (prospective contractual relationship), NC Mutual Wholesale Drug (prospective

contractual relationship), Arriva Medical (prospective contractual relationship), CCS Medical (prospective contractual relationship), and DDP Medical Supply (prospective contractual relationship) not to purchase and sell plaintiff UniStrip's FDA cleared test strips to consumers. Some or all of these actual or prospective customers were told by LifeScan that the restrictions in the LifeScan contract precluded them from buying UniStrip's competitive test strips and/or their rebates would be revoked and their pricing significantly increased; and

   (c)  conditioned its payment of rebates, allowance of discounts, and payment of cooperative marketing funds on the agreement and refusal by wholesalers and retailers not to purchase UniStrip's test strips.

  26.  Exclusive dealing arrangements have the effect of inducing or coercing a buyer to purchase most, or all, products for a period of time from one supplier.  The arrangement may take the form of a requirements contract committing the buyer to purchase all (or a substantial portion) of its requirements of a specific product only from one supplier.  Such unlawful arrangements also include pricing or rebate policies that create a substantial disincentive to purchase products from competitive sources.

  27.  Exclusionary arrangements do not actually have to achieve total exclusivity to be deemed unlawful under Section 3.  Moreover, "de facto" arrangements, understandings and/or contracts are also anticompetitive if they create or maintain market power resulting in the exclusion of rivals even if not express.

  28.  Exclusionary arrangements or contracts can be found illegal even though the contract/arrangement does not contain specific agreements not to use the products of a competitor, if the practical effect is to prevent such use or purchase.

29.     Defendant LifeScan's anticompetitive and exclusionary conduct described herein is not motivated or driven by technological or efficiency concerns, and has no valid or legitimate business justification.  Rather, its purpose and effect is to ensure that plaintiff UniStrip and other competitive rivals in the relevant market cannot successfully invade or erode defendant LifeScan's dominant and entrenched market position that enable it to charge supracompetitive test strip prices.

30.     During the relevant time period, defendant LifeScan and plaintiff UniStrip have both marketed and sold test strips in the United States.  The marketing, distribution and sale of such products directly involves, and substantially affects, interstate commerce.  The violations of the Clayton Act alleged herein adversely, directly and substantially affect the flow of such products in interstate commerce.

31.     The aforesaid conduct of LifeScan has produced antitrust injury, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:

(a)     competition in the development of test strips has been substantially and unreasonably restricted, lessened, foreclosed and eliminated;

(b)     barriers to entry into the relevant markets have been raised;

(c)     consumer choice has been, and will continue to be, significantly limited and constrained as to selection and price of test strips;

(d)     consumer access to UniStrip's competitive products will be artificially restricted and reduced and its products will continue to be excluded from the market;

(e)     the market for development and sale of test strip products will continue to be artificially restrained; and

(f)     LifeScan will continue to charge supracompetitive prices to the detriment of consumers.

32.     Defendant LifeScan's practices, described above, have foreclosed competition in a substantial share of the relevant markets and have substantially lessened competition and tended to create a monopoly for LifeScan in the relevant markets, and/or sub-market.

33.     Defendant LifeScan's exclusionary agreements, arrangements and/or contracts have caused antitrust injury to plaintiff UniStrip and to competition and consumers.  Conduct that restricts consumer choice or makes the market unresponsive to consumer preference harms consumers and results in antitrust injury.  When an agreement detrimentally changes the market makeup and limits consumers' choice to one source of output this causes cognizable antitrust injury by preventing its victims from making free and unhindered choices between market alternatives.

34.     Defendant LifeScan's predatory and exclusionary conduct has caused antitrust injury to plaintiff UniStrip, competition and consumers.

35.     By reason of, and as a direct and proximate result of defendant LifeScan's practices and conduct, plaintiff UniStrip has suffered, and will continue to suffer, financial injury to its business and property.  As a result, plaintiff has been deprived of revenues and profits it would have otherwise made, suffered diminished market growth and sustained a loss of goodwill.  Plaintiff has not yet calculated the precise extent of its past damages and cannot now estimate with precision the future damages that continue to accrue, but when it does so, it will seek leave of the Court to insert the amount of the damages sustained herein.

## SECOND CAUSE OF ACTION
### (Contracts and Agreements in Violation of
### Section One of the Sherman Act (15 U.S.C. § 1))

36.     UniStrip hereby alleges and incorporates by reference each allegation set forth in

Paragraphs 1 through 35 of this First Amended Complaint, as if set forth in full herein.

37.     Section 1 of the Sherman Act (15 U.S.C. § 1) prohibits, *inter alia*, contracts or

agreements that unreasonably restrain competition to the detriment of consumers.

38.     LifeScan's conduct has been highly successful in distorting and/or eliminating

competition in the relevant market by forcing customers to choose higher priced LifeScan test

strips over the substantially lower priced test strips offered by plaintiff UniStrip.

39.     The relevant product market (and submarket) for antitrust purposes in this case is

defined as: (a) all blood glucose disposable test strips, and (b) as a submarket, the disposable test

strips cleared by the FDA for use with LifeScan's OneTouch Ultra, Ultra2, UltraSmart and

UltraMini glucose test meters.  No test strips other than those produced by LifeScan and UniStrip

are reasonably interchangeable or cleared for use with the above-identified LifeScan glucose test

meters.  There are no substitutes for these test strips.  The relevant market only consists of

commodities reasonably interchangeable by consumers for the same purpose.  There is a low

cross-elasticity of demand between test strips for use with LifeScan's test meters and test strips

that are not compatible with and cannot be used on such meters.

40.     The relevant geographic market for antitrust purposes is the United States.

41.     Defendant LifeScan has sufficient economic power in the relevant market.  Its

market share of the overall total test trip market is about 40%, and the share for its test strips to

be used with these four LifeScan branded meters is virtually 100%.  LifeScan has a significant

economic interest in the market and clearly dominates and controls these markets.

42.     Plaintiff UniStrip has the requisite standing to assert antitrust claims against defendant LifeScan because it is a participant and competitor in the relevant market.

43.     The anticompetitive scheme and plan of defendant LifeScan to unreasonably restrain trade in the above-described trade and commerce has been done with the intent to specifically eliminate plaintiff UniStrip as a viable competitor and threat to LifeScan's test strip business, and to reduce competition to the detriment of consumers.  These agreements and combinations constitute unreasonable restraints of trade.  The overall anticompetitive scheme of LifeScan consists of at least the following acts/conduct to be viewed as a whole:

(a)     successfully threatened, intimidated and coerced actual and potential purchasers of UniStrip test strips, wholesalers and retailers, not to buy UniStrip's alternative test strips;

(b)     induced, organized and implemented a group boycott, or concerted refusal to deal, among wholesalers and retailers including, but not limited to, Walgreen's (prospective contractual relationship), Burlington Drug (prospective contractual relationship), Discount Drug Mart (cancelled contract), AmerisourceBergen (prospective contractual relationship), GEMCO Medical (prospective contractual relationship), NC Mutual Wholesale Drug (prospective contractual relationship), Arriva Medical (prospective contractual relationship), CCS Medical (prospective contractual relationship), and DDP Medical Supply (prospective contractual relationship), not to purchase and sell plaintiff UniStrip's FDA cleared test strips to consumers. Some or all of these actual or prospective customers were told by LifeScan that the restrictions in the LifeScan contract precluded them from buying UniStrip's competitive test strips and/or their rebates would be revoked and their pricing significantly increased; and

(c)      conditioned the continued payment of rebates, allowance of discounts, and payment of cooperative marketing funds on the agreement and refusal by wholesalers and retailers including, but not limited to, Walgreen's (prospective contractual relationship), Burlington Drug (cancelled contract), Discount Drug Mart (cancelled contract), AmerisourceBergen (prospective contractual relationship), GEMCO Medical (prospective contractual relationship), NC Mutual Wholesale Drug (prospective contractual relationship), Arriva Medical (prospective contractual relationship), CCS Medical (prospective contractual relationship), and DDP Medical Supply (prospective contractual relationship), not to purchase UniStrip's test strips.

44.      This case does not challenge the actual prices charged by defendant, but revolves around threats to terminate purchase rebates.  So far as plaintiff now knows, no such rebates have been terminated but if that would occur, the prices paid by purchasers would be higher not lower. Accordingly, this is not a predatory or below-cost pricing claim.  Among other things, it is the threat of terminating rebates, and thereby threatening to substantially increase prices, that is being used by LifeScan as a scheme to maintain exclusivity.

45.      The contracts at issue were written, issued and administrated from LifeScan's corporate headquarters.  The locus, therefore, of LifeScan's anticompetitive activity emanates directly from Wayne, Pennsylvania.

46.      As a direct result of the foregoing anticompetitive conduct and restrictions on competition, consumers pay substantially higher prices – about  500% to 600% more -- for test strips than they would in a fully competitive and open market.  The contracts and agreements have limited, if not eliminated, the availability of UniStrip1 test strips, and restricted consumer choice of test strips.  There are no legitimate business, technological or efficiency reasons or

justifications that require defendant LifeScan to impose these anticompetitive conditions and restrictions.

47.     LifeScan's restrictions, threats and arrangements have created a barrier that precludes effective entry by UniStrip and other competitors into the relevant market, and the quality and variety of offerings in that market have been reduced and constrained.

48.     Defendant LifeScan's arrangements are unlawful under the antitrust laws when assessed under the "Rule of Reason."  The anticompetitive consequences of LifeScan's conduct outweigh any procompetitive effects thereof.  Due to LifeScan's significant market power in the relevant market and the dominant position it has obtained, competition in that market has been significantly impaired by defendant's conduct.  The four manufacturers of blood glucose meter systems, LifeScan, Roche Diagnostics, Abbot Diagnostics and Bayer each have a unique system in which the test strips of one manufacturer are not interchangeable with the strips of any other manufacturer.  Once a customer acquires a blood glucose meter, that customer is locked into using strips that are compatible with that manufacturer's branded meter only.  Therefore, the meter and test strips of each manufacturer constitute a separate relevant sub-market.  Moreover, because of the sizeable demand for LifeScan branded test strips, wholesalers and retailers have a significant economic need to have access to those strips for resale.  Finally, in some instances, insurers will enter into arrangements with LifeScan so that the insured customer is locked into using LifeScan test strips with the LifeScan test meter.

49.     The aforesaid conduct of LifeScan has produced antitrust injury, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:

(a)     competition in the development, sale and marketing of test strips has been substantially and unreasonably restricted, lessened, foreclosed and eliminated;

(b)     barriers to entry into the test strips market have been raised;

(c)     consumer choice has been, and will continue to be, significantly limited and constrained as to availability, selection, price and quality of test strips;

(d)     consumer access to competitive test strip products, such as UniStrip's, will be artificially restricted and reduced;

(e)     the market for development and sale of test strips will continue to be artificially restrained; and

(f)     LifeScan will continue to gouge consumers by charging supracompetitive prices for its branded test strips.

50.     Defendant LifeScan's restrictions and arrangements affect a substantial volume of interstate commerce in the relevant market.

51.     Defendant LifeScan's predatory and exclusionary conduct has caused antitrust injury to plaintiff UniStrip, competition generally and consumers.  Predatory or anticompetitive conduct is that which unfairly tends to be exclusionary or tends to destroy competition.

52.     By reason of, and as a direct and proximate result of defendant LifeScan's practices and conduct, plaintiff UniStrip has suffered, and will continue to suffer, financial injury to its business and property.  As a result, plaintiff has been deprived of revenues and profits it would have otherwise made, suffered diminished market growth and sustained a loss of goodwill.  Plaintiff has not yet calculated the precise extent of its past damages and cannot now estimate with precision the future damages that continue to accrue, but when it does so, it will seek leave of the Court to insert the amount of the damages sustained herein.

### THIRD CAUSE OF ACTION
**(Attempted Monopolization in Violation of
Section 2 of the Sherman Act (15 U.S.C. § 2))**

53.     Plaintiff UniStrip hereby realleges and incorporates by reference each allegation
set forth in Paragraphs 1 through 52 of this First Amended Complaint, as if set forth in full
herein.

54.     Section 2 of the Sherman Act (15 U.S.C. § 2) prohibits, *inter alia*, attempts to
monopolize any part of the trade or commerce among the States.

55.     Defendant LifeScan's conduct and practices are anticompetitive, predatory and/or
exclusionary.  Part of LifeScan's overall unlawful scheme is described in paragraph 26, above.

56.     Plaintiff UniStrip has the requisite standing to assert antitrust claims against
defendant LifeScan because it is a participant and competitor in the relevant market.

57.     Absent action by this Court to enjoin and preclude defendant LifeScan from
continuing its anticompetitive and exclusionary conduct, there is a dangerous probability that
LifeScan will succeed in obtaining or continuing a monopoly in the relevant markets, including
the power to set prices, reduce output or exclude competition in those markets.  A dangerous
probability of monopoly power exists where the defendant possesses a significant market share
when it undertakes the challenged anticompetitive conduct.

58.     The relevant product market (and submarket) for antitrust purposes in this case is
defined as: (a) all blood glucose disposable test strips, and (b) as a submarket, the disposable test
strips cleared for use with LifeScan's OneTouch Ultra, Ultra2, UltraSmart and UltraMini glucose
test meters.  LifeScan touts itself as the leader in the "market for blood glucose monitoring
systems," which includes its test meters.  LifeScan claims market superiority based its meters'
fastness, ease of use, and accuracy.  No test strips other than those produced by LifeScan and

UniStrip are reasonably interchangeable or cleared for use with the above-identified LifeScan glucose test meters.  There are no substitutes for these test strips.  The relevant market only consists of commodities reasonably interchangeable by consumers for the same purpose.  There is a low cross-elasticity of demand between test strips for use with LifeScan's test meters and test strips that are not compatible with and cannot be used on such meters.

59.     The relevant geographic market for antitrust purposes is the United States.

60.     Defendant LifeScan has undertaken its anticompetitive and exclusionary conduct with the purpose of monopolizing, and with the deliberate and specific intent to attempt to monopolize the market for blood glucose disposable test strips, and the submarket for test strips for use with LifeScan OneTouch Ultra, Ultra2, UltraSmart and UltraMini glucose test meters, in the United States.  Defendant LifeScan specifically intends to eliminate, destroy or foreclose meaningful competition in the relevant market through the tactics and agreements described above.  LifeScan's conduct has induced or coerced wholesalers and retailers, including but not limited to, Walgreen's (prospective contractual relationship), Burlington Drug (prospective contractual relationship), Discount Drug Mart (cancelled contract), AmerisourceBergen (prospective contractual relationship), GEMCO Medical (prospective contractual relationship), NC Mutual Wholesale Drug (prospective contractual relationship), Arriva Medical (prospective contractual relationship), CCS Medical (prospective contractual relationship), and DDP Medical Supply (prospective contractual relationship) not to purchase and sell plaintiff UniStrip's FDA cleared test strips to consumers.  Some or all of these actual or prospective customers were told by LifeScan that the restrictions in the LifeScan contract precluded them from buying UniStrip's competitive test strips and/or their rebates would be revoked and their pricing significantly increased.  LifeScan's conduct discourages and/or precludes buyers/distributors of disposable

test strips from dealing or contracting with competing manufacturers, such as plaintiff. LifeScan's scheme is designed to exclude and thwart competition while allowing it to charge supracompetitive prices for its disposable test strips.

61.     As described above, significant and high barriers to market entry exist that preclude or discourage new manufacturers from entering the relevant market, or sub-market. Significant barriers to expansion also exist because only a small number of competitors have managed to marginally penetrate this market.

62.     Defendant LifeScan's anticompetitive acts affect a substantial amount of interstate commerce in the relevant market and constitute attempted monopolization in violation of Section 2 of the Sherman Act.  Defendant LifeScan's conduct is not motivated by technological or efficiency concerns and has no valid or legitimate business justification. Instead, its purpose and effect is to further or preserve its dominant position and stranglehold, and to injure consumer welfare, plaintiff UniStrip and other competitive rivals in the relevant market.

63.     Defendant LifeScan's anticompetitive acts have caused substantial economic injury to plaintiff UniStrip, and have also injured competition in the relevant markets by, *inter alia*, foreclosing, lessening and eliminating competition and depriving consumers from securing lower cost test strips.

64.     The aforesaid conduct of LifeScan has produced antitrust injury, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:

(a)     competition in the development of test strips has been substantially and unreasonably restricted, lessened, foreclosed and eliminated;

(b)     barriers to entry into the relevant markets have been raised;

(c)     consumer choice has been, and will continue to be, significantly limited and constrained as to availability, selection and price of test strips;

(d)     consumer access to UniStrip's competitive test strips will be artificially restricted and reduced and its products will continue to be excluded from the market;

(e)     the market for development and sale of test strips in the relevant market will continue to be artificially restrained or monopolized; and

(f)     LifeScan will continue to charge supracompetitive prices to the detriment of consumers.

## FOURTH CAUSE OF ACTION
### (Intentional Interference with Prospective Economic Advantage and Actual Contractual Relationships)

65.     Plaintiff UniStrip hereby alleges and incorporates by reference each allegation set forth in Paragraphs 1 through 64 of this First Amended Complaint, as if set forth in full herein.

66.     This Court has jurisdiction over this Fourth Cause of Action based on the doctrine of supplemental jurisdiction (28 U.S.C. § 1367) because this Fourth Cause of Action arises from the same transactions and from a common nucleus of operative facts as alleged in the first three federal causes of actions.

67.     Plaintiff UniStrip has existing and valuable contractual and business relationships, as well as reasonable expectations of further and future relationships, with buyers/distributors of test strips.  These potential and actual customers include but are not limited to, Walgreen's (prospective contractual relationship), Burlington Drug (prospective contractual relationship), Discount Drug Mart (cancelled contract), AmerisourceBergen (prospective contractual relationship), GEMCO Medical (prospective contractual relationship), NC Mutual Wholesale

20

Drug (prospective contractual relationship), Arriva Medical (prospective contractual relationship), CCS Medical (prospective contractual relationship), and DDP Medical Supply (prospective contractual relationship).   Some or all of these actual or prospective customers were told by LifeScan that the restrictions in the LifeScan contract precluded them from buying UniStrip's competitive test strips and/or their rebates would be revoked and their pricing significantly increased.

68.    Defendant LifeScan was aware of these prospective business and actual contractual relationships and engaged in intentional and wrongful conduct designed or calculated to disrupt and interfere with those relationships without any legitimate justification.

69.    Defendant LifeScan's wrongful conduct in interfering with such prospective business and actual contractual relationships is intentional and malicious .  LifeScan's conduct and overall scheme was specifically undertaken solely to hinder, if not eliminate, competition so that LifeScan can continue to reap supracompetitive prices and profits on test strips.  LifeScan's anticompetitive conduct is independently improper and wrongful and was not privileged or excused and was without any legitimate business justification.  LifeScan has knowingly engaged in such wrongful conduct for the purpose of excluding competition and to deprive consumers of the benefits of free and open competition for test strips.

70.    Defendant LifeScan's conduct was a substantial factor in proximately causing financial injury to plaintiff UniStrip and has rendered it more difficult for plaintiff to remain and survive as a viable competitor.  LifeScan's purposeful wrongful actions harmed UniStrip's existing relationships with customers and prevented prospective economic relationships from occurring.

71.     Plaintiff UniStrip's business and goodwill has been, and will continue to be, substantially injured by LifeScan's conduct.  Additionally, actual and prospective customers of plaintiff UniStrip will continue to be injured and harmed by LifeScan's improper and unjustified acts and practices.  Although plaintiff UniStrip has incurred substantial losses as a proximate result of the foregoing acts, and will continue to incur substantial losses in the future as well as its growth being negatively impacted, all such losses may be difficult to calculate with precision. Therefore, in addition to any recoverable damages proximately caused by LifeScan's wrongful conduct, plaintiff UniStrip also seeks a permanent injunction preventing LifeScan from continued interference in the future.

72.     The intentional and disruptive conduct of defendant LifeScan is willful, malicious and oppressive.  Consequently, an award of exemplary or punitive damages in an amount sufficient to punish and deter LifeScan is warranted.

## VII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE plaintiff UniStrip prays that this Court adjudges and decrees and follows:

A.     That the conduct alleged in the First Cause of Action herein be adjudged to be in violation of Section 3 of the Clayton Act (15 U.S.C. § 14);

B.     That the conduct alleged in the Second Cause of Action herein be adjudged to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1);

C.     That the conduct alleged in the Third Cause of Action herein be adjudged to be an unlawful attempt to monopolize in violation of Section 2 of the Sherman Act (15 U.S.C. § 2);

D.     That the conduct alleged in the Fourth Cause of Action herein be adjudged to constitute intentional interference with prospective economic advantage and actual contractual relationships;

E.   That, pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiff recover treble the amount of its actual damages sustained by reason of those federal antitrust violations;

F.   That, pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiff be awarded a reasonable attorneys' fee and costs of litigation;

G.   That, pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), the anticompetitive, predatory and/or exclusionary conduct of defendant LifeScan be permanently enjoined;

H.   That plaintiff UniStrip be awarded punitive or exemplary damages on its tort claim; and

I.   For such other and further relief as the Court deems just and proper.

## VIII.  JURY DEMAND

Plaintiff UniStrip hereby demands trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated:  November 19, 2014                    Respectfully submitted,

UNISTRIP TECHNOLOGIES, LLC

By: */s/ Neill W. Clark*
    Neill W. Clark
    FARUQI & FARUQI, LLP
    101 Greenwood Avenue, Suite 600
    Jenkintown, Pennsylvania 19046
    Telephone: (215) 277-5771
    Facsimile: (215) 277-5771
    E-mail:  nclark@faruqilaw.com

*Attorney  for Plaintiff UniStrip Technologies, LLC*

*Of Counsel:*

Maxwell M. Blecher
Donald R. Pepperman
Jennifer S. Elkayam

BLECHER COLLINS PEPPERMAN &
JOYE, P.C.
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656
E-mail:     mblecher@blechercollins.com
            dpepperman@blechercollins.com
            jelkayam@blechercollins.com

*Attorneys for Plaintiff UniStrip*
*Technologies, LLC*