**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
------------------------------------------------------------------ x
UNISTRIP TECHNOLOGIES, LLC,                   :
                                              :
                              Plaintiff,      :    Civil Action No. 14-CV-04518-JHS
                                              :
              vs.                             :
                                              :
LIFESCAN, INC. and LIFESCAN                   :
SCOTLAND, LTD.,                               :
                                              :
                              Defendants      :
                                              :
                                              :
                                              :
------------------------------------------------------------------ x
```

## [PROPOSED] ORDER

AND NOW, on this _____ day of _____ 2015, the Court, having

reviewed Defendants LifeScan, Inc. and LifeScan Scotland, Ltd.'s motion to dismiss filed

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and having heard argument on

this motion, hereby ORDERS that the motion is GRANTED.

IT IS HEREBY ORDERED that the above-captioned Complaint is dismissed.


Dated: _____          By: _____
                                         The Honorable Joel H. Slomsky
                                         United States District Judge
                                         Eastern District of Pennsylvania

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNISTRIP TECHNOLOGIES, LLC,<br><br>                    Plaintiff,<br><br>       vs.<br><br>LIFESCAN, INC. and LIFESCAN<br>SCOTLAND, LTD.,<br><br>                    Defendants. | No. 2:14-cv-04518-JHS<br><br>**Oral Argument Requested** |

## <u>DEFENDANTS' MOTION TO DISMISS  PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

Defendants LifeScan, Inc. and LifeScan Scotland, Ltd. (collectively "Defendants"), by and through undersigned counsel, respectfully move this Court to dismiss the Amended Complaint in the above-captioned action.  The arguments in support of this Motion are set forth in the accompanying memorandum of law, which is incorporated by reference herein. Pursuant to Local Rule of Civil Procedure 7.1(f), Defendants further request that the Court hear argument from the parties on this Motion.

WHEREFORE, Defendants respectfully request that the instant Motion be granted and that the Amended Complaint be dismissed.

Respectfully,

*s/  William F. Cavanaugh, Jr.*
William F. Cavanaugh, Jr.
New York Bar No. 1715481
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

Robin P. Sumner (82236)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA, 19103-2799
Phone: (215) 981-4652

*Attorneys for Defendants*
*LifeScan, Inc. and LifeScan Scotland, Ltd.*

Dated:  December 19, 2014

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNISTRIP TECHNOLOGIES, LLC,<br><br>                Plaintiff,<br><br>   vs.<br><br>LIFESCAN, INC. and LIFESCAN<br>SCOTLAND, LTD.,<br><br>               Defendants. | No. 2:14-cv-04518-JHS<br><br>**Oral Argument Requested** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS THE COMPLAINT**

**REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF THE FACTS ...................................................................................................2

      A.     The Parties and Their Products .................................................................................2

      B.     UniStrip's Original Complaint.................................................................................3

      C.     UniStrip's First Amended Complaint .....................................................................4

ARGUMENT .................................................................................................................................6

I.       Relevant Legal Standard ....................................................................................................6

II.      UniStrip Failed to State a Claim Under the Antitrust Laws ..............................................6

      A.     UniStrip's Antirust Claims Must Be Dismissed Under the Price-Cost Test ..........6

      B.     Alternatively, UniStrip's Antitrust Claims Must Be Dismissed Because
             UniStrip Has Not Adequately Alleged that LifeScan's Conduct
             Substantially Lessened Competition.....................................................................10

            1.     UniStrip Has Not Adequately Pleaded Market Foreclosure ....................10

            2.     UniStrip Has Not Alleged that LifeScan's Agreements Lock in
                 Customers for Years .................................................................................12

            3.     UniStrip Has Not Alleged that LifeScan Engages in Other
                 Anticompetitive Acts ...............................................................................13

            4.     LifeScan's Rebates and Discounts Have Procompetitive Effects.............13

III.     UniStrip's Tortious Interference Claims Fail .................................................................14

CONCLUSION..............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.D.E. Food Servs. Corp. v. City of Philadelphia*,
No. 95-7485, 1996 U.S. Dist. LEXIS 15159 (E.D. Pa. Oct. 11, 1996) ...................................18

*Abbyy USA Software House, Inc. v. Nuance Cmmcn's, Inc.*,
No. 08-CV-01035, 2008 U.S. Dist. LEXIS 90308 (N.D. Cal. Nov. 6, 2008) .........................11

*Acumed LLC v. Advanced Surgical Servs.*,
561 F.3d 199 (3d Cir. 2009)....................................................................................................15

*Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*,
No. 09-7952, 1992 U.S. Dist. LEXIS 6479 (E.D. Pa. Apr. 28, 1992) ....................................16

*Allstate Transp. Co. v. SEPTA*,
No. 97-1482, 1998 U.S. Dist. LEXIS 1740 (E.D. Pa. Feb. 12, 1998) .....................................17

*Applied Tech. Int'l, Ltd. v. Goldstein*,
No. 03-848, 2004 U.S. Dist. LEXIS 21219 (E.D. Pa. Oct. 18, 2004) ....................................16

*Barr Labs., Inc. v. Abbott Labs.*,
978 F.2d 98 (3d Cir. 1992)......................................................................................................10

*Behrend v. Bell Tel. Co.*,
242 Pa. Super. 47, 363 A.2d 1152 (Pa. Sup. Ct. 1976), *vacated and remanded
on other grounds* 473 Pa. 320 (1977) ...................................................................................19

*Brooke Group v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)................................................................................................................7, 8

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011)......................................................................................................6

*Cameron v. New Hanover Mem'l Hosp., Inc.*,
58 N.C. App. 414, 293 S.E.2d 901 (1982)..............................................................................17

*Cannella v. Brennan*,
No. 12-CV-1247, 2014 U.S. Dist. LEXIS 107944 (E.D. Pa. Aug. 5, 2014) ..............16, 17, 18

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ..................................................................................................8

*East-West Arts & Entm't Group v. DeYoung*,
1994 U.S. Dist. LEXIS 9720 (E.D. Pa. July 7, 1994)..............................................................18

*Exclaim Mktg., LLC v. DIRECTV, Inc.*,
No. 5:11-CV-00684, 2012 U.S. Dist. LEXIS 102770 (E.D.N.C. Jul. 23, 2012)....................15

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Gallas v. Supreme Court*,
　No. 96-6450, 1998 U.S. Dist. LEXIS 14172 (E.D. Pa. Aug. 25, 1998) ...................................18

*In re: Ins. Brokerage Antitrust Litig.*,
　618 F.3d 300 (3d Cir. 2010)......................................................................................................6

*Irwin Indus. Tool Co. v. Worthington Cylinders Wis.*,
　LLC, No. 3:08-CV-291, 2010 U.S. Dist. LEXIS 12372 (W.D.N.C. Feb. 12,
　2010) ........................................................................................................................................15

*Jablonski v. Pan Am. World Airways, Inc.*,
　863 F.2d 289 (3d Cir. 1988).......................................................................................................9

*Jim Forno's Cont'l Motors, Inc. v. Subaru Distrib. Corp.*,
　649 F. Supp. 746 (N.D.N.Y. 1986) ...........................................................................................11

*Majer v. Sonex Research, Inc.*,
　541 F. Supp. 2d 693 (E.D. Pa. 2008) .........................................................................................5

*Mummies of the World Touring Co., LLC v. Design & Prod., Inc.*,
　No. 5:12-cv-754, 2013 U.S. Dist. LEXIS 97048 (E.D.N.C. July 11, 2013)............................16

*NicSand, Inc. v. 3M Co.*,
　507 F.3d 442 (6th Cir. 2007) ......................................................................................................8

*People Sec. Life Ins. Co. v. Hooks*,
　322 N.C. 216, 367 S.E.2d 647 (1988).......................................................................................15

*PNY Techs., Inc. v. SanDisk Corp.*,
　No. 11-CV-04689, 014 U.S. Dist. LEXIS 90649 (N.D. Ca. Jul. 2, 2014).........................11, 12

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
　No. 12-CV-05847, 2013 U.S. Dist. LEXIS 151128 (N.D. Cal. Oct. 18, 2013)...........10, 11, 12

*Schmidt v. Skolas*,
　770 F.3d 241 (3d Cir. 2014).......................................................................................................5

*T.A.M., Inc. v. Gulf Oil Corp.*,
　553 F. Supp. 499 (E.D. Pa. 1982) .............................................................................................10

*Thompson Coal Co. v. Pike Coal Co.*,
　488 Pa. 198, 412 A.2d 466 (1979) .......................................................................................17, 18

*United States v. Dentsply Int'l, Inc.*,
　399 F.3d 181 (3d Cir. 2005).......................................................................................................13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Wilson v. Potter*,
  159 Fed. App'x. 415 (3d Cir. 2005)............................................................................9

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007)....................................................................................5

*Woodbury Daily Times Co. v. Los Angeles Times-Washington Post News Serv.*
  616 F. Supp. 502 (D.N.J. 1985) ............................................................................13

*X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*,
  155 F. Supp. 2d 577 (E.D. Va. 2001) ...................................................................16

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012)........................................................................ passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 3, 6

Restatement (Second) of Torts § 766 cmt. g.............................................................18

Defendants LifeScan, Inc. and LifeScan Scotland, Ltd. (collectively, "LifeScan")

respectfully submit this memorandum of law in support of LifeScan's motion pursuant to Fed. R.

Civ. P. 12(b)(6) to dismiss in its entirety the First Amended Complaint ("FAC") filed by

UniStrip Technologies, LLC ("UniStrip").

## PRELIMINARY STATEMENT

The parties to this lawsuit are competing sellers of blood glucose test strips, which

are products that diabetic consumers use to self-monitor their blood glucose levels.  UniStrip's

second attempt to plead cognizable federal antitrust and tort claims based on LifeScan's pricing

fares no better than its initial effort.

The essence of UniStrip's claims is that LifeScan conditions its payment of

rebates and discounts on customers agreeing not to stock UniStrip's competing test strip.  In its

FAC, UniStrip doubles down on this assertion, adding an allegation that "[t]his case . . . revolves

around threats to terminate purchase rebates."  FAC ¶ 44.

In other words, UniStrip alleges that LifeScan is engaging in legitimate price

competition.  Because low prices benefit competition, courts dismiss antitrust claims premised

on price unless the defendant is engaged in predatory pricing (i.e. pricing below cost with the

expectation that those lost profits can be recouped in the future).  UniStrip has not and cannot

allege that LifeScan prices its products below cost.  Accordingly, UniStrip's antitrust claims

must be dismissed with prejudice.

Equally fatal to UniStrip's antitrust claims is its failure to adequately plead that

LifeScan's conduct is substantially lessening competition.  UniStrip attempts to cure this defect

in its FAC by identifying two retailers, three wholesalers, and four mail-order suppliers who

allegedly face a loss of rebates under their contracts if they stock UniStrip.  This allegation does not salvage UniStrip's antitrust claims.

Having referenced these contracts in the FAC, the Court may now consider LifeScan's contract with national wholesaler AmerisourceBergen and the contract with Walgreens, one of the nation's largest pharmacy chains.  ████████████████████ ██████████████████████████████████████████████████████████████████████ ██████ Nor is there any allegation that major retailers such as Walmart face a loss in rebates if they stock UniStrip.  Accordingly, while some customers allegedly may have agreed to carry only LifeScan's strips for use in a LifeScan meter, the FAC fails to allege facts creating a plausible basis on which to conclude that LifeScan is foreclosing UniStrip from a substantial share of the market or that any LifeScan customer is locked into a lengthy contract that precludes it from accepting a competitive offer from UniStrip.

UniStrip's state-law tort claims are inadequate for related reasons.  UniStrip has not alleged any wrongful conduct by LifeScan given the absence of a viable antitrust claim. Moreover, identifying nine alleged lost business opportunities without including any allegations as to why UniStrip expected to obtain or maintain these contractual relationships does not make out a cause of action for tortious interference.  UniStrip needs to plead more than a mere hope of winning or keeping this business, and it has not done so.

## STATEMENT OF THE FACTS

### A.    The Parties and Their Products

Defendant LifeScan, Inc. is headquartered in Wayne, Pennsylvania, and Defendant LifeScan Scotland, Ltd. is a U.K. corporation with its principal place of business

2

located in Inverness, Scotland. *Id.* ¶¶ 8-9. LifeScan is in the business of selling blood glucose monitoring systems, which include meters and test strips. *Id.* ¶ 1.

UniStrip, a limited liability company located in North Carolina, sells a competing blood glucose test strip under the trade name UniStrip1™. *Id.* ¶¶ 2, 7, 11. According to UniStrip, the U.S. Food and Drug Administration recently approved UniStrip1™ for use with LifeScan's OneTouch® Ultra®, OneTouch® Ultra® 2, OneTouch® UltraMini, and OneTouch® UltraSmart® meters. *Id.* ¶ 12. UniStrip refers to its test strip as the "generic" alternative to LifeScan's test strips. *Id.*

## B.     UniStrip's Original Complaint

On July 29, 2014, UniStrip filed suit in this Court and brought federal antitrust claims under the Sherman Act and Clayton Act, as well as state-law claims for tortious interference with actual contractual relationships and tortious interference with prospective economic advantage.

In its original Complaint, UniStrip based its antitrust and state-law claims on anticompetitive conduct that was summed up in a single paragraph in its Complaint:

> The overall anticompetitive scheme of LifeScan consists of at least the following acts/conduct to be viewed as a whole:
>
> (a)     successfully threatened, intimidated and coerced actual and potential purchasers of UniStrip test strips, wholesalers and retailers, not to buy such test strips;
>
> (b)     induced, organized, and implemented a group boycott, or concerted refusal to deal, among wholesalers and retailers not to purchase and sell plaintiff UniStrip's FDA cleared test strips to consumers; and
>
> (c)     conditioned its payment of rebates, allowance of discounts, and payment of cooperative marketing funds on the agreement and refusal by wholesalers and retailers not to purchase UniStrip's test strips.

3

Cmplt. ¶ 26.

These allegations provided no details about how LifeScan executed this purportedly anticompetitive campaign.  In fact, the only thing that was clear from UniStrip's original Complaint was that the lynchpin of UniStrip's case was its allegation that LifeScan conditioned its payment of rebates and discounts on customers' refusal to purchase the UniStrip1™.  *See id.*

C.     **UniStrip's First Amended Complaint**

On October 31, 2014, LifeScan moved to dismiss the Complaint.  Rather than respond to the merits of LifeScan's motion, UniStrip filed an Amended Complaint.  In its revised pleading, UniStrip continues to premise its antitrust claims solely on LifeScan linking rebates and discounts to a customer's agreement not to stock the UniStrip1™.  No other "anticompetitive conduct" is alleged.  *See* FAC ¶¶ 25, 43, 60.  But UniStrip has not alleged that the discounts and rebates LifeScan offers to customers amount to pricing below LifeScan's costs in making and selling its test strips.

UniStrip's claims of alleged anticompetitive conduct are still summed up in a single paragraph.  *See* FAC ¶ 25.  The only substantive change to UniStrip's entire pleading is that UniStrip now, in a conclusory listing, identifies two retailers, three wholesalers, and four mail order suppliers whose rebates are purportedly conditioned on their refusal to stock the UniStrip1™: (1) Walgreens, (2) Burlington Drug, (3) Discount Drug Mart, (4) AmerisourceBergen, (5) GEMCO Medical, (6) NC Mutual Wholesale Drug, (7) Arriva Medical, (8) CCS Medical, and (9) DDP Medical Supply.  *See id.*

Because UniStrip has identified the rebates that LifeScan pays to AmerisourceBergen and Walgreen's as a basis for its antitrust claims, *see* FAC ¶¶ 25, 43, 60,

4

these companies' agreements may be considered by the Court on a motion to dismiss.  *See, e.g.*,

*Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693, 699 n.2 (E.D. Pa. 2008) (taking judicial

notice of subscription agreements in connection with motion to dismiss because agreements

formed foundation for plaintiff's claims).[1]  In its public filings, AmerisourceBergen describes

itself as "one of the largest global pharmaceutical sourcing and distribution services companies."

*See* Declaration of William F. Cavanaugh in Support of Motion for Judicial Notice ("Judicial

Notice Decl.") Ex. A at 1.  Walgreens similarly explains that it is "the largest drugstore chain in

the United States with net sales of $76.4 billion. . . ."  *See id.* Ex. B ("Overview").

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████   *See* Declaration of William F. Cavanaugh, Jr. in Support of Motion to Dismiss

("MTD Decl.") Exs. 1 & 2.  ██████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████   *See id.* Ex. 1 § 2.1; Ex. 2 § 2.1.

    The list of customers identified in the FAC also does not include Walmart, the

largest retailer in the United States.  Walmart maintains stores in all 50 states and netted more

than $279 billion last year.  *See* Judicial Notice Decl. Ex. D at 6.  Nor does the FAC allege that

Express Scripts, a company that has a huge mail order operation and serves over 68,000 retail

pharmacies representing over 95% of all U.S. retail pharmacies, faces any contractual limitations

in stocking UniStrip.  *See id.* Ex. C at 3.

---

[1] On a motion to dismiss, the Court may consider documents that are "integral to and/or were explicitly relied upon by the amended complaint."  *Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007). The Court's consideration of such documents will not serve as a basis for converting a motion to dismiss into one for summary judgment.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## ARGUMENT

### I.      RELEVANT LEGAL STANDARD

To withstand a Rule 12(b)(6) motion, "the complaint [must] allege 'enough facts to state a claim to relief that is plausible on its face.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility standard "requires showing more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 221 (quotations omitted).  "A complaint which pleads facts 'merely consistent with a defendant's liability, stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quotations omitted).  The plausibility standard is of particular importance in antitrust cases.  *See In re: Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010) (antitrust cases are "'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim.") (citation omitted).

### II.     UNISTRIP FAILED TO STATE A CLAIM UNDER THE ANTITRUST LAWS

UniStrip's claims under the Sherman Act and the Clayton Act are based on LifeScan's alleged quasi-exclusive dealing.[2] (FAC ¶¶ 2, 26, 37, 51).  UniStrip's principal allegation is that LifeScan threatened to terminate customers' rebates if they purchased the UniStrip1™.  (*Id.* ¶¶ 25, 43, 60).

#### A.      UniStrip's Antitrust Claims Must Be Dismissed Under the Price-Cost Test

Low prices generally benefit consumers and competition.  Consequently, antitrust claims premised on aggressive price competition by an alleged monopolist are dismissed, unless

---

[2]Exclusive dealing claims may be brought under Sections 1 and 2 of the Sherman Act as well as under Section 3 of the Clayton Act.  *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 n.8 (3d Cir. 2012).

they are accompanied by an allegation that the defendant has engaged in "predatory" pricing. Such a claim requires plaintiff to allege (and prove) that the defendant has market power, has priced its products below cost in an effort to eliminate competition, and, once the competition is eliminated, will be able to recoup its lost profits by charging supracompetitive prices in the future.  *See generally Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993).

Where, as here, plaintiff alleges an exclusive dealing arrangement in which the mechanism to gain exclusivity is price, the Third Circuit has recognized that such a claim should be examined under the *Brooke Group* test for predatory pricing.  *See ZF Meritor v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012).  The standard for determining whether the price-cost test applies is a simple one:  The Court must use the price-cost test when a "plaintiff alleges that price is the vehicle of exclusion."  *See id.* at 273.  If price is the mechanism of exclusion, then antitrust claims must be dismissed unless a plaintiff has made an allegation that "the defendant's prices are below an appropriate measure of [the defendant's] costs."  *Id.* at 269 (alterations in original).

The FAC does not allege that the rebates and discounts LifeScan offers to customers that agree not to stock UniStrip result in below-cost pricing.  Nor is there any allegation that LifeScan intends (or would have the ability) to recoup losses from below cost pricing.  *See Brooke Group*, 509 U.S. at 224 ("Recoupment is the ultimate object of an unlawful predatory pricing scheme; it is the means by which a predator profits from predation.")

A look at two of the leading cases that have examined the price-cost test is instructive.  In *Brooke Group v. Brown & Williamson Tobacco Corp.*, a generic cigarette manufacturer alleged that a competing manufacturer used rebates in an effort to "purge

competition from the economy segment of the cigarette market."  *See* 509 U.S. at 220, 227.  The

Supreme Court applied the price-cost test to plaintiff's claims, reasoning that "'[l]ow prices

benefit consumers regardless of how those prices are set, and so long as they are above predatory

levels, they do not threaten competition.'"  *Id.* at 223 (quoting *Atlantic Richfield Co. v. USA

Petroleum Co.*, 495 U.S. 328, 340 (1990)).

      In contrast, in *ZF Meritor*, the Third Circuit, while recognizing the potential

applicability of the *Brooke Group* test, declined to apply the test when rebates were only "a part"

of the anticompetitive campaign.  *See* 696 F.3d at 277.  The plaintiff in that case proved that

defendant (1)  forced every direct purchaser to enter into long-term agreements on terms

unfavorable to the purchasers; (2) compelled the purchasers to remove the plaintiff from their

data books; and (3) made the purchasers believe that the defendant would walk away from the

agreements if the purchasers failed to meet their contractual targets.  *See* 696 F.3d at 277-78.

      The FAC alleges a very different scenario.  UniStrip's claims rise (and fall) under

the price-cost framework because rebates and discounts are the only means of exclusion that

UniStrip has identified.  *See Brooke Group*, 509 U.S. at 220, 227 (applying price-cost to case in

which rebates were the mechanism of exclusion); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d

442, 451-52 (6th Cir. 2007) (applying price-cost test to claims based on up-front discounts);

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1061-63 (8th Cir. 2000) (applying

price-cost test to Section 2 claim based upon market-share discount program).

      Unlike in *ZF Meritor*, rebates and discounts are not alleged to be ***part*** of

LifeScan's allegedly anticompetitive scheme; rebates and discounts ***are*** the alleged scheme.

There is no allegation that LifeScan forces customers to enter into long-term agreements or

detrimental agreements, refuses to supply customers if they purchase UniStrip1™, or engages in

tortious acts.  Therefore, the price-cost test applies because this is "a case in which the defendant's low price was the clear driving force behind the customer's compliance with [the contractual goals], and the customers were free to walk away if a competitor offered a better price."  *ZF Meritor*, 696 F.3d at 278.

According to UniStrip, its claims are premised on LifeScan's alleged threats to terminate rebates, which amount to threats to ***raise*** prices.  *See* FAC ¶ 44 (LifeScan "does not challenge the actual prices charged by defendant" but instead challenges "threats to terminate rebates" which are tantamount to threats "to substantially increase prices").  But absent sufficient allegations of predation, making exclusivity a condition of favorable pricing (through rebates or otherwise) does not give rise to an antitrust claim.  Put differently, even if LifeScan made good on its purported threats and terminated customers' rebates, UniStrip's claims would still be based on price.  Focusing on the fact that the customer would pay a higher price because of a loss rebates if it foregoes exclusivity does not change the analysis.  It is simply the flip side of the allegation that the rebate and "low price" is offered to secure exclusivity.

Because UniStrip cannot make allegations that would survive the price-cost test, its antitrust claims should be dismissed with prejudice.  If given leave to amend, UniStrip could not allege that LifeScan engaged in below-cost pricing.  Therefore, further amendment would be futile.  *See Wilson v. Potter*, 159 Fed. App'x. 415, 418 (3d Cir. 2005) (affirming lower court's refusal to grant plaintiff leave to file second amended complaint partly because amendment would be futile); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) ("Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.") (citation omitted).

**B.      Alternatively, UniStrip's Antitrust Claims Must Be Dismissed Because UniStrip Has Not Adequately Alleged that LifeScan's Conduct Substantially Lessened Competition**

Where an exclusive dealing arrangement involves more than price, it is subject to the rule-of-reason test.  Under the rule of reason, a plaintiff must allege that the defendant's conduct was such that its "'probable effect' is to substantially lessen competition in the relevant market, rather than merely disadvantage rivals."  *ZF Meritor*, 696 F.3d at 281 (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327-29 (1961)).

In determining whether a plaintiff has adequately alleged a substantial lessening of competition, courts consider many factors, including: (1) the extent of market foreclosure, (2) the duration of the allegedly anticompetitive agreements, (3) the nature of the anticompetitive conduct, and (4) any procompetitive justifications for defendants' conduct.  *See id.* at 286-89.  UniStrip's allegations fail under a rule of reason analysis.

**1.      UniStrip Has Not Adequately Pleaded Market Foreclosure**

To adequately allege market foreclosure, a plaintiff needs to allege "substantial" foreclosure.  *See id.* at 286.  *Compare id.* at 284 (jury verdict on exclusive dealing claim affirmed when degree of foreclosure was similar to a market in which "a dominant supplier enters into complete exclusive dealing arrangements with 90% of the customer base"); *with Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 111 (3d Cir. 1992) (15% market preemption insufficient to sustain claim); *T.A.M., Inc. v. Gulf Oil Corp.*, 553 F. Supp. 499, 505 (E.D. Pa. 1982) (no foreclosure when only 149 out of 3,000 gas stations were affected).

Courts require plaintiffs to make meaningful allegations to plead substantial foreclosure.  For example, in *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-CV-05847, 2013 U.S. Dist. LEXIS 151128 (N.D. Cal. Oct. 18, 2013), several independent diagnostic

laboratories had alleged that an agreement between the Blue Cross and Blue Shield Association and Quest Diagnostics, Inc. amounted to exclusive dealing in violation of the antitrust laws.  *See id.* at \*36-37.  The plaintiffs, who were the two largest competitors other than Quest, contended that the agreement foreclosed them from the marketplace.  *See id.* at \*37.

The court found that this factual allegation did not plead substantial foreclosure because plaintiffs had not "provide[d] the Court with enough allegations to determine whether a 'substantial share' of the relevant market was foreclosed."  *Id.* at \*38.  The court reasoned that "[i]t may very well be that [plaintiffs] constitute a 'substantial share' of the relevant market or markets, but with only what the plaintiffs present, the Court cannot tell."  *Id.*; *see also PNY Techs., Inc. v. SanDisk Corp.*, No. 11-CV-04689, 014 U.S. Dist. LEXIS 90649, at \*21 (N.D. Ca. Jul. 2, 2014) (first amended complaint did not state claim for exclusive dealing because new facts did not allege practical effect of purported exclusive dealing; complaint did not allege that defendant had "exclusive contracts with 11 of 16 retailers or that no exclusive dealing contract had ever been terminated"); *Abbyy USA Software House, Inc. v. Nuance Cmmcn's, Inc.*, No. 08-CV-01035, 2008 U.S. Dist. LEXIS 90308, at \*6-7 (N.D. Cal. Nov. 6, 2008) (dismissing exclusive dealing claim on 12(b)(6) motion when only allegation of market foreclosure was plaintiff's claim that it was "foreclosed from certain retail outlets") (quotations omitted); *Jim Forno's Cont'l Motors, Inc. v. Subaru Distrib. Corp.*, 649 F. Supp. 746, 754 (N.D.N.Y. 1986) (granting motion to dismiss antitrust claim when plaintiff did not "at least suggest . . . the amount of competition foreclosed").

Here, the FAC similarly falls short of alleging substantial foreclosure.  Other than its conclusory allegation that LifeScan's conduct "substantially and unreasonably restricted, lessened, foreclosed and eliminated" competition, *see* FAC ¶ 31, the FAC's only attempt to plead

substantial foreclosure is the identification of two retailers, three wholesalers, and four mail-order suppliers whose rebates and discounts are purportedly conditioned on their refusal to stock UniStrip's test strip.  *See id.* ¶ 25.  ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████.  *See* MTD Decl. Exs. 1 & 2.  As to the remaining customers identified in the FAC, ████████████████████████████████████

████████████, there is no allegation that these customers represent a substantial share of the market.  Unlike in *Rheumatology Diagnostics, Lab.*, UniStrip has not even offered allegations concerning these entities' market power.  Nor does the FAC allege that UniStrip made competitive offers to these customers.

Even aside from the deficiency of the FAC, it is clear that UniStrip was not foreclosed from a substantial share of the market.  UniStrip does not challenge LifeScan's contracts with Walmart, the country's biggest retailer, which alone represents a significant portion of the market.

### 2.    UniStrip Has Not Alleged that LifeScan's Agreements Lock in Customers for Years

An exclusive dealing arrangement does not foreclose UniStrip from competing if a customer is free to terminate the arrangement in the face of a competitive offer from UniStrip. *Compare PNY Techs., Inc.*, 2014 U.S. Dist. LEXIS, at *15 ("The prevailing rule in districts and circuits across the country is that where exclusive or semi-exclusive contracts are short in duration, easily terminable, incentive-based, and leave open alternative channels to competitors, they are not exclusionary") (citations omitted) *with  ZF Meritor*, 696 F.3d at 286 (finding that plaintiff had demonstrated a substantial lessening of competition when rebate agreements were not short term).

UniStrip has not alleged that LifeScan's rebate and other agreements locked in customers for years, precluding them from accepting a more competitively attractive offer from UniStrip. ████████████████████████████  ████████████  ████████████████████████████████████████████████  *See* MTD Decl. Exs. 1 § 2.1; 2 § 2.1.  In other words, the FAC does not allege that LifeScan customers are unable to terminate their agreements with LifeScan and agree to accept competitive offers from UniStrip.

### 3.    UniStrip Has Not Alleged that LifeScan Engages in Other Anticompetitive Acts

UniStrip's antitrust claims are exclusively premised on price.  The only harm to customers if they stock the UniStrip1™, according to UniStrip, is that they will lose favorable price terms.  There is no allegation that customers will lose access to LifeScan test strips.  *See United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 185-86, 190, 193 (3d Cir. 2005) (reversing judgment for defendant on antitrust claims when defendant refused to sell its products to customers if exclusive dealing terms were not met).

### 4.    LifeScan's Rebates and Discounts Have Procompetitive Effects

There is no dispute that customers receive better pricing through LifeScan's agreements, and that they could walk away from the agreements at any time if UniStrip offered a better price.  Competitive pricing is procompetitive.  Therefore, LifeScan's rebates and discounts have procompetitive effects.  *See Woodbury Daily Times Co. v. Los Angeles Times-Washington Post News Serv.* 616 F. Supp. 502, 511 (D.N.J. 1985) (finding for defendant when exclusive subscription arrangement had pro-competitive effect of causing media outlets to use other subscription news services which, in turn, made variety of topics and opinions available to

consumers).  UniStrip's unwillingness or inability to present a more attractive offer does not provide a basis for a claim against LifeScan.

## III.     UNISTRIP'S TORTIOUS INTERFERENCE CLAIMS FAIL

UniStrip's state tort claims fare no better than its federal antitrust claims.  First, UniStrip's allegations fail to demonstrate that LifeScan was not justified when it engaged in the purported "interference."  Second, UniStrip does not adequately allege that LifeScan interfered with any existing contractual relationships or any potential contractual relationships that were reasonably probable to come into existence.

### A.     UniStrip's Own Allegations Establish That LifeScan's Actions Were Justified and That LifeScan Did Not Employ Wrongful Means To Interfere

The FAC establishes that nothing about LifeScan's alleged conduct is tortious. Other than its labels and conclusions, the Amended Complaint's only factual description of the means used to accomplish the alleged interference are the allegations that "that the restrictions in the LifeScan contract precluded [businesses] from buying UniStrip's competitive test strips and/or their rebates would be revoked and their pricing significantly increased" and, similarly, that LifeScan "conditioned its payment of rebates, allowance of discounts, and payment of cooperative marketing funds on the agreement and refusal by wholesalers and retailers not to purchase UniStrip's test strips"  FAC ¶¶ 25, 60, 67.  Thus, UniStrip does not allege that LifeScan employed any of the means traditionally considered tortious in the interference context, such as fraud or physical violence, but rather that LifeScan's contractual arrangements with *its own customers* conditioned price reductions upon the customers' not purchasing the UniStrip1™. This is insufficient as a matter of law to sustain UniStrip's tort claim.

14

To state a claim under Pennsylvania or North Carolina law, a plaintiff must allege that, in interfering, the defendant acted without privilege or justification.  *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 214 (3d Cir. 2009); *Exclaim Mktg., LLC v. DIRECTV, Inc.*, No. 5:11-CV-00684, 2012 U.S. Dist. LEXIS 102770, at *8 (E.D.N.C. Jul. 23, 2012).  The laws of both states recognize that a defendant is justified in encouraging a third party not to deal with a plaintiff with whom the defendant is in competition.  *Acumed*, 561 F.3d at 215; *People Sec. Life Ins. Co. v.  Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988) ("[C]ompetition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful."); *Irwin Indus. Tool Co. v. Worthington Cylinders Wis.*, LLC, No. 3:08-CV-291, 2010 U.S. Dist. LEXIS 12372, at *13 (W.D.N.C. Feb. 12, 2010) ("[I]nterference with a contract is justified when the plaintiff and defendant are engaged in competition with each other.").

Applying Pennsylvania law, the Third Circuit has explained that a party is privileged, in the course of competition, to interfere in the relationships of a competitor who "seeks to sell similar products to prospective purchasers," *Acumed*, 561 F.3d 199 at 215, as long as, *inter alia*, "the actor does not employ wrongful means [and] his action does not create or continue an unlawful restraint of trade."  *Id*. (quoting Restatement (Second) of Torts § 768).  In this context, "wrongful means" consists of conduct that is "actionable for a reason independent from the claim of tortious interference."  *Id*.  As discussed in the preceding section, LifeScan's alleged conduct did not constitute an unlawful restraint of trade.  For the same reason, it is also not independently actionable and therefore cannot, in the context of competition between the parties, form the basis of a tortious interference claim.

**B.    UniStrip Has Not Adequately Alleged the Existence of Any Actual or Prospective Business Relationships**

The FAC's description of the contractual and prospective relationships at issue consists of no more than a listing of eight entities described parenthetically as "prospective contractual relationship[s]" and one entity described as a "cancelled contract."  FAC ¶ 67.  This cannot form the basis of a tortious interference claim.  *See Cannella v. Brennan*, No. 12-CV-1247, 2014 U.S. Dist. LEXIS 107944, at *32-33 (E.D. Pa. Aug. 5, 2014) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 554-55 (2007)) ("To bring a tortious interference claim . . . the plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'").

Moreover, to state a claim for tortious interference with prospective business relations under Pennsylvania law, a plaintiff must plead more than a "mere hope" that it was going to enter a contractual relationship with the third party.  *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, No. 09-7952, 1992 U.S. Dist. LEXIS 6479, at *32 (E.D. Pa. Apr. 28, 1992).  A plaintiff "must allege facts giving rise to an 'objectively reasonable probability' that . . . a contract would arise from the parties' current dealings."  *Applied Tech. Int'l, Ltd. v. Goldstein*, No. 03-848, 2004 U.S. Dist. LEXIS 21219, at *17 (E.D. Pa. Oct. 18, 2004) (quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994)).

North Carolina law imposes a similar requirement.  *See Mummies of the World Touring Co., LLC v. Design & Prod., Inc.*, No. 5:12-cv-754, 2013 U.S. Dist. LEXIS 97048, at *10 (E.D.N.C. July 11, 2013) (dismissing tortious interference claim where "plaintiff offer[ed] nothing to suggest how likely it was that [the third party] would continue to contract with them"); *X-It Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 653-55 (E.D. Va. 2001) (dismissing tortious interference claim under, *inter alia*, North Carolina law

16

because plaintiff did not demonstrate "more than a mere subjective hope of a future business relationship"); *Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982) ("Where the claim is based upon wrongful interference with prospective advantage, plaintiffs must show lack of justification for inducing a third party to refrain from entering into a contract with them *which contract would have ensued* but for the interference") (emphasis added).  The FAC does not meet this requirement.

There is no reason why, if the "prospective contractual relationship[s]" were reasonably probable, UniStrip does not allege facts suggesting that it had more than a "mere hope" that they would ensue.  For instance, the FAC does not describe negotiations with the prospective customers or any competitive offer.  Instead, the FAC merely lists names of entities, accompanied by perfunctory and conclusory parenthetical notations about the status of the purported relationships.  This does not suggest even the existence of a subjective expectation of a contract, much less provide notice of facts constituting an objectively reasonable probability.  *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 210, 412 A.2d 466, 472 (1979) (holding that "some expectation" of contract renewal does not constitute "any reasonably probable rights"); *Cannella v. Brennan*, 2014 U.S. Dist. LEXIS 107944, at *34-35 (E.D. Pa. Aug. 5, 2014) (tortious interference with contract insufficiently pled despite complaint's inclusion of the names of the third parties at issue).  Indeed, this Court has noted that even allegations of *past* dealings with the third parties in question—which, notably, UniStrip does not allege here—do not rise to the level of "reasonable probability."  *Allstate Transp. Co. v. SEPTA*, No. 97-1482, 1998 U.S. Dist. LEXIS 1740, *14 (E.D. Pa. Feb. 12, 1998).

The claim for interference with a single existing contractual relationship (with Discount Drug Mart, FAC ¶ 67) fails for the same reason.  First, the FAC contains no facts about

17

the contract in question or the circumstances under which it was "cancelled"—a point which, alone, renders the claim inadequate. *See Cannella, supra,* at *32-33; *A.D.E. Food Servs. Corp. v. City of Philadelphia*, No. 95-7485, 1996 U.S. Dist. LEXIS 15159, at *31 (E.D. Pa. Oct. 11, 1996) (dismissing claim because "if existing contracts were interfered with, Plaintiffs should be able to make some allegation regarding what contracts or types of contracts these were, and they have failed to do so"); *East-West Arts & Entm't Group v. DeYoung*, 1994 U.S. Dist. LEXIS 9720, at *37 (E.D. Pa. July 7, 1994) ("Pennsylvania law requires that the defendant 'have knowledge not only of the existence of the contractual relationship, but also of the terms of that contract which conferred upon the claimant the rights allegedly interfered with.'") (quoting *Ebasco Servs. Inc. v. Pa. Power & L. C*o., 402 F. Supp. 421, 453 (E.D.Pa. 1975)).

Furthermore, UniStrip does not allege that LifeScan procured a breach of a contract with Discount Drug Mart, but rather describes its injury as a "*cancelled* contract." This suggests that the "contract" at issue was terminable rather than one for a fixed term, and situates the Discount Drug Allegation similarly to the "prospective" relationships. *See Thompson Coal*, 488 Pa. at 210 (requiring "reasonable basis" to expect renewal of year-to-year lease to sustain tortious interference claim); Restatement (Second) of Torts § 766 cmt. g ("One's interest in a contract terminable at will is primarily an interest in future relations between the parties, and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to interference with prospective contractual relations."); *Gallas v. Supreme Court*, No. 96-6450, 1998 U.S. Dist. LEXIS 14172, at *14 (E.D. Pa. Aug. 25, 1998) ("a contract terminable at-will is closely analogous to a prospective contractual relationship—probably bringing it within the ambit of the tort of prospective interference"). As with its claims regarding prospective

relationships, UniStrip alleges no facts to suggest that it had more than a "mere hope" that the relationship with Discount Drug Mart would continue.

The inadequacy of the allegations about the relationships with which LifeScan allegedly interfered infects other elements of the claim. *See Behrend v. Bell Tel. Co.*, 242 Pa. Super. 47, 62, 363 A.2d 1152, 1160 (Pa. Sup. Ct. 1976), *vacated and remanded on other grounds* 473 Pa. 320 (1977) ("[T]he tort contemplates a relationship, prospective or existing, of some substance, some particularity, before an inference can arise as to its value to the plaintiff and the defendant's responsibility for its loss").  That is, aside from a "formulaic recitation of the elements," UniStrip does not allege that LifeScan knew about any one of those prospective relationships, nor does it describe how LifeScan's actions were causally related to any one of them remaining unconsummated.  Without more than a "formulaic recitation" of its purported expectations, UniStrip fails to plead an injury, much less one caused by tortious behavior by LifeScan.

**<u>CONCLUSION</u>**

For the reasons discussed above, the Court should dismiss the Complaint.

Dated:  December 19, 2014

*s/  William F. Cavanaugh, Jr.*

William F. Cavanaugh, Jr.
New York Bar No. 1715481
Stephanie Gyetvan
New York Bar No. 4738860
David Kleban
New York Bar No. 5137864
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Phone:  (212) 336-2000


Robin P. Sumner (82236)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA, 19103-2799
Phone: (215) 981-4652

*Attorneys for Defendants LifeScan, Inc. and
LifeScan Scotland, Ltd.*

20

## **CERTIFICATE OF SERVICE**

I, Stephanie Gyetvan, hereby certify that on December 19, 2014, a true and correct copy of the foregoing Motion to Dismiss and accompanying Memorandum of Law was served upon Counsel of Record via the Court's ECF system.

*s/ Stephanie Gyetvan*
Stephanie Gyetvan

21